**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GENIA SARAH LANDA,

      Plaintiff,

      v.                                        Civ. No. 20-836 KWR/SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,[1]

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      Claimant Genia Sarah Landa argues that the Administrative Law Judge ("ALJ") who denied her claim for disability insurance benefits under the Social Security Act erred in weighing some of the medical opinions in the record. On August 21, 2020, the Honorable Kea W. Riggs referred this matter to me for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 6. Because substantial evidence supports the decision below and Ms. Landa identifies no harmful legal error in the proceedings, I recommend the Court DENY Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 21, and affirm the decision below.[2]

---

[1] Kilolo Kijakazi was appointed the acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] I reserve discussion of the background, procedural history, and medical records relevant to this appeal for my analysis.

## APPLICABLE LAW

A.     <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)     At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)     At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)     At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)     If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Ms. Landa argues that the ALJ erred when she evaluated the opinions of the following medical providers: (1) Nancy Rosen, LCSW; (2) Cheryl Blossom, LCSW, LISW-S; and (3) Steven K. Baum, PhD. I find the ALJ's discussion of each is supported by substantial evidence and free of harmful legal error; therefore, I recommend affirmance.

### A.   Standard of review

The ALJ is required to evaluate every medical opinion he receives that could have an effect on the RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017,[4] as the present claim is, medical opinions are classified into two different categories: "acceptable medical sources" and "other sources." "Acceptable medical sources" include licensed physicians and psychologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298. The Commissioner's regulations provide guidance for evaluating opinions from acceptable medical sources using the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c).

---

[4] For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

These same factors apply to opinion evidence from non-acceptable medical sources, 20 C.F.R. §§ 404.1527(f), 416.927(f), but a medical opinion from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is a non-acceptable medical source. SSR 06-03p, 2006 WL 2329939, at *4-5.

The ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The ALJ's reasons are reviewed for substantial evidence. *Doyal*, 331 F.3d at 764.

B.     LCSW Nancy Rosen

LCSW Rosen completed a Medical Assessment of Ability to do Work-Related Activities (Mental) ("MSS") on April 7, 2016. AR 1357-58. She assessed mostly slight and moderate limitations. *Id.* She assessed marked limitations in the ability to maintain attention and concentration for extended periods of time. *Id.* She also assessed marked limitations in ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. *Id.* On the same day, LCSW Rosen also completed listing forms for 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders. AR 1359-60. She assessed marked restrictions on activities of daily living; marked difficulties in maintaining concentration, persistence, and pace; and marked difficulties in maintaining social functioning. *Id.*

The ALJ evaluated her opinion as follows:

[S]ocial worker Nancy Rosen, LCSW . . . checked slight or moderate in all areas of understanding, memory and concentration except for the ability to maintain attention for extended periods and the ability to complete a normal workweek

> without psychological interruptions, both of which she checked marked. . . . [S]he found no more than slight limitation in all areas of social interaction and adaptation. However, she then proceeded to check marked restriction/difficulty with daily activities, concentration and social functioning on the subsequent pages. . . . [T]he inconsistencies of Ms. Rosen undermine her persuasiveness and she receives little weight.

AR 39.

Ms. Landa argues that the ALJ's decision to reduce the weight given to LCSW Rosen based on the ALJ's determination of inconsistencies in these forms is wrong because it does not account for the distinction between the two kinds of forms: MSS forms are for step four and listing forms are for steps two and three of the disability analysis. Doc. 21 at 10 ("listings forms are generally used to assess mental impairment for purposes of steps two (identifying severe impairments) and three (rating severity for the listing), and are structured specifically in terms of the B and C criteria of the listings for mental impairments" (internal quotation marks omitted)). In arguing that the ALJ's error in discounting LCSW Rosen's opinions requires remand, Ms. Landa is asserting the ALJ made a legal error; she is not asserting substantial evidence fails to support the ALJ's conclusions. That is, Ms. Landa's argument does not take into account opinions from acceptable medical sources who contradict LCSW Rosen; instead, her argument is that discounting the opinion of LCSW Rosen based on inconsistencies in the MSS and listing forms constitutes an error in process that requires remand (regardless of what other evidence exists in the record).

In support of her argument, Ms. Landa cites my opinion in *Finley v. Berryhill*, No. 17-698 SCY, 2019 WL 1118138 (D.N.M. Mar. 11, 2019). In *Finley*, I recognize that the forms for a functional assessment and a listing assessment have different purposes, and these differences can explain inconsistencies between them. *Id.* at *9. I emphasized in *Finley* that the ALJ, "noting only one area of inconsistency between the two forms; i.e., social functioning, . . . chose to

discount the entirety of Dr. Jenkusky's assessed limitations in *all* areas of functioning without further explanation" and I called this "insufficient." 2019 WL 1118138, at *9 (emphasis in original). I reiterate this proposition: an inconsistency in *part* of a medical opinion does not necessarily constitute grounds for an ALJ to reject the *entire* opinion. That is, where an opinion is entirely consistent in one area, the ALJ is not automatically entitled to reject that consistent opinion based on an inconsistency in an unrelated area. The facts of the present case illustrate this point.

LCSW Rosen wrote that Ms. Landa has only "slight" limitations in adaptation and social functioning on the MSS form. AR 1358. Yet, she also wrote on the same date on the listing forms that Ms. Landa has "marked" limitations in daily activities and social functioning. AR 1359-60. The fact that these forms have different purposes does not mean they can say different things without being inconsistent. Saying Ms. Landa has "slight" limitations in social functioning on one form is inconsistent with saying Ms. Landa has "marked" limitations in social functioning on a different form.[5]

LCSW Rosen's inconsistent ratings of Ms. Landa's social functioning however, did not necessarily infect her evaluation of Ms. Landa in a separate area—namely, the extent of Ms. Landa's ability to concentrate. In contrast to LCSW Rosen's opinions about Ms. Landa's social functioning limitations, LCSW Rosen was entirely consistent when assessing Ms. Landa's ability to concentrate. Not only did LCSW Rosen check the box on the listing form that indicated Ms.

---

[5] Some of the inconsistency that occasionally occurs when a person fills out both forms can be explained by the nature of the forms. The forms do have a different purpose and the check-box style of the forms creates a greater opportunity for inconsistency. This is especially true given that the listing form does not provide a "slight" or "moderate" option. Instead, it takes on all or nothing approach: the author filling out the listing form must either check a box that says "marked" limitation or provide no indication at all of an assessed limitation.

Landa had marked limitations in concentration, she also underlined the word "concentration," an emphasis tool she used nowhere else on the form. AR 1360. Consistent with this, on the MSS form she handwrote that Ms. Landa is markedly limited in her ability to concentrate. AR 1357. LCSW Rosen's inconsistency in one area (social functioning limitations) does not nullify her findings in an unrelated area she addressed with greater focus (concentration limitations). Had LCSW Rosen been a treating psychologist (see *Finley*) and had her opinion not been contradicted by examining psychologists, substantial evidence might not have supported the ALJ's assessment of Ms. Landa's concentration limitations. The actual facts before me, however, do not demonstrate error in either the process the ALJ followed or in her weighing of the evidence.

First, noting that LCSW Rosen made inconsistent statements is not reversible error. Instead, it is a statement of fact: LCSW Rosen indisputably made inconsistent statements when she assessed Ms. Landa's social functioning limitations differently on two different forms. Nor was it error for the ALJ, when deciding how much to rely on LCSW Rosen's opinion, to consider the overall quality of her report, including whether her report contained internal inconsistencies. Such inconsistencies, although alone insufficient to justify a wholesale rejection of LCSW Rosen's report, do bear on the care LCSW Rosen gave to completing her assessments and the dependability of those assessments.

Second, neither *Finley* nor the unpublished Tenth Circuit cases Ms. Landa cites support the relief Ms. Landa requests. The Tenth Circuit cases hold that an ALJ does not err by adopting the limitations from the more specific functional assessment forms over broader opinions expressed in listing forms. *Chrismon v. Colvin*, 531 F. App'x 893, 898 (10th Cir. 2013) ("There is no inconsistency. The medical source who prepared both documents simply explained on the

MRFCA the particularized underpinnings for the PRT's categorical ratings, and the ALJ properly used the former rather than the latter for the step-five determination."); *Lull v. Colvin*, 535 F. App'x 683, 686 (10th Cir. 2013) ("The ALJ's RFC determination included the limitations in the MRFCA assessment. Ms. Lull's claim that the ALJ erred in using the MRFCA because it was inconsistent with the PRT is without merit."). These cases fall short of supporting Ms. Landa's position that it is legal error for an ALJ to rely on this type of internal inconsistency in discounting a medical source opinion. *Chrismon* and *Lull* both affirm an ALJ and hold that reliance on the more specific form over the more general form is not error. Similarly unavailing is my holding in *Finley* that an ALJ cannot necessarily reject all of a treating physician's opinions based on an unrelated inconsistency in the MSS and listing forms. The holdings from these cases are much different than, and do not support, the holding Ms. Landa seeks here: that an ALJ automatically commits reversible error by considering inconsistencies between the MSS and listing forms.

Third, and most importantly, the ALJ did not rely on internal consistencies alone to justify rejecting LCSW Rosen's report. The ALJ, when discussing LCSW Rosen's opinion, emphasized that she does not have an extensive treatment relationship with Ms. Landa. AR 39. And more importantly, after addressing the opinion of LCSW Rosen, the ALJ evaluated the opinions of three examining psychologists who concluded that Ms. Landa can work despite some limitations on concentration. AR 40-41. As acceptable medical sources, the ALJ appropriately placed a greater reliance on the opinions of these doctors than on the opinion of LCSW Rosen. SSR 06-03p, 2006 WL 2329939, at *4-5.

As the ALJ explained, Jack Araza, Ph.D., opined that Ms. Landa "could engage appropriately in a work environment and concentrate sufficiently to carry out simple or detailed

tasks." AR 40. The ALJ gave Dr. Araza's opinion "significant weight, as he is a mental health expert, examined the claimant, and gave clinical findings to support his opinion." *Id.* Thomas Dhanens, Ph.D., "opined that the claimant should be able to perform unskilled work, provided that it did not require technical or clerical retraining." *Id.* "Dr. Dhanens is an expert in the relevant field who personally examined the claimant, and I accord his opinion significant weight." *Id.* Finally, Mary Loescher, Ph.D., opined the claimant would be "mildly" impaired in her ability to follow instructions and function in a work setting. AR 40-41. The ALJ "accord[ed] some weight to Dr. Loescher's opinion. She appears overly reliant on the claimant's subjective report, and her clinical findings suggest a higher level of functioning. Her opinion is vague in some aspects, but generally consistent with my residual functional capacity finding." AR 41. The ALJ concluded this analysis by stating:

> The opinions of consultative psychologists Drs. Araza, Dhanens, and Loescher, though completed over the course of five years, are generally consistent with one another and the record as a whole. In essence, these psychologists agreed that the claimant was cognitively limited and definitely unable to perform more than unskilled work, and but that she was capable of working, as she had demonstrated in the past.

*Id.*

The opinions of the three psychologists are substantial evidence to support the ALJ's RFC that Ms. Landa can work despite a mild limitation in her ability to concentrate. Indeed, on appeal, Ms. Landa does not argue otherwise. Ms. Landa only argues that the ALJ committed reversible error by failing to more thoroughly discuss LCSW Rosen's opinion. However, no rule, regulation, statute, or precedential case requires the ALJ to evaluate "concentration" separately and explicitly when it comes to the check-box opinion of a non-treating, non-acceptable medical source. Instead, the ALJ's discussion is subject to the more basic question of whether it is supported by substantial evidence. And, given the availability of opinions from three licensed

psychologists, the ALJ was justified in providing a more limited discussion of the opinion of a nurse who did not have an extensive relationship with Ms. Landa.

The ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* "In the case of a nonacceptable medical source like [LCSW Rosen], the ALJ's decision is sufficient if it permits us to follow the adjudicator's reasoning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (internal quotation marks omitted). Here, I can follow ALJ Richter's reasoning: compared to the social worker who did not have an "extensive treatment relationship" with Ms. Landa, the ALJ deferred to the opinions of the three examining psychologists who are "mental health experts" and gave "clinical findings to support their opinions." AR 40. The ALJ should not be required to expressly reiterate the corollary in the paragraph that is specifically about LCSW Rosen on the bottom of AR 39—i.e., that LCSW Rosen is not a mental health expert and that she did not give clinical findings to support her opinion. *Cf. Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (if the ALJ discussed relevant evidence elsewhere, "he is not required to continue to recite the same evidence again in rejecting [a medical] opinion" if the ALJ's discussion is sufficiently clear). Applying "common sense" instead of "technical perfection," *Keyes-Zachary*, 695 F.3d at 1166, I recommend affirmance of the discussion of LCSW Rosen's opinion because it is supported by substantial evidence.

C.   <u>LCSW Cheryl Blossom</u>

Cheryl Blossom, LCSW completed forms finding that Ms. Landa met the listings for 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders due to marked restrictions in

social functioning, daily activities, and maintaining concentration, persistence, and pace. AR
1581-82, 1585-86. ALJ Richter gave little weight to this opinion:

> It is inconsistent with the findings and opinion of Dr. Loescher, who examined the
> claimant only a few months previously. Moreover, it is inconsistent with 2017
> treatment notes from psychiatrist Dr. Vera, reporting good mood, bright affect,
> good spirits, low anxiety, no nightmares, and sleeping well.

AR 42 (citations omitted).

Ms. Landa argues on appeal that these reasons are insufficient. First, Ms. Landa points
out that the ALJ called Dr. Loescher's opinion "vague in some aspects." AR 41. If the ALJ does
not know what Dr. Loescher's opinion is, reasons Ms. Landa, how can the ALJ say whether it is
consistent with LCSW Blossom's opinion? Doc. 21 at 11.

I disagree. Again, "the ALJ's decision is sufficient if it permits us to follow the
adjudicator's reasoning." *Keyes-Zachary*, 695 F.3d at 1164 (internal quotation marks omitted).
The inconsistences between Dr. Loescher's opinion and LCSW Blossom's opinion are clear. Dr.
Loescher thought Ms. Landa was "mildly" impaired in her ability to follow instructions in a
work setting; LCSW Blossom thought she was "markedly" impaired in daily activities and
maintaining social functioning, concentration, persistence, and pace. AR 1381, 1581. Dr.
Loescher stated that work would cause Ms. Landa "anxiety" but was vague as to how much
anxiety it would produce or what impact anxiety would have on her ability to work; LCSW
Blossom thought that Ms. Landa's anxiety was so severe that she categorically met the listing
criteria for a disability. *Id.* These opinions certainly are inconsistent with one another, and the
ALJ's decision to reject a non-acceptable medical source's opinion in favor of the three
examining psychologists is, as discussed above, supported by substantial evidence.

Second, Ms. Landa challenges the ALJ's finding that LCSW Blossom's opinion "is
inconsistent with 2017 treatment notes from psychiatrist Dr. Vera, reporting good mood, bright

affect, good spirits, low anxiety, no nightmares, and sleeping well." AR 42 (citing Exhibit 34F/2, or AR 1457). "While Dr. Vera's note does document the findings listed by the ALJ," Ms. Landa argues, "it alone does not paint a full picture of Ms. Landa's functioning as reflected in the record as a whole." Doc. 21 at 12.

But the ALJ clearly intended to compare LCSW Blossom's December 7, 2017 opinion with contemporaneous medical evidence—a treatment note dated September 27, 2017. I do not find it error for the ALJ to point out that Ms. Landa's treating psychiatrist, Dr. Vera, found her to be doing well at nearly the same time as the social worker found her to be so disabled that she met the criteria for two disability listings.

Ms. Landa also argues that the ALJ's statement mischaracterized the record as a whole. "[B]ecause the record as a whole provides ample support for the limitations indicated by LCSW Blossom, the ALJ's citation to a single treatment note does not rise to the standard of substantial evidence." Doc. 21 at 12. This argument, however, ignores that the ALJ provided a discussion of the record as a whole pertaining to Ms. Landa's mental health earlier in the opinion. The ALJ was not required to repeat this discussion when evaluating LCSW Blossom's opinion. *Endriss*, 506 F. App'x at 777. And there is no requirement that the ALJ discuss every piece of evidence, only that she demonstrate she considered the relevant evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *cf. Mays v. Colvin*, 739 F.3d 569, 575-76 (10th Cir. 2014) (the burden is on the claimant to point to probative evidence the ALJ ignored).

In this case, Ms. Landa argues the ALJ should have considered the following evidence (marked by bullet point), and the Court disagrees for the following reasons (set forth immediately below the bullet point):

- Ms. Landa argues that Dr. Vera "believed Ms. Landa need[ed] to remain following her current treatment plan" and could not be discharged without further treatment. Dr.

Vera also recorded Axis I diagnoses of PTSD, major depressive disorder ("MDD"), dysthymia, generalized anxiety disorder ("GAD"), and social anxiety. Doc. 21 at 12 (citing AR 1457-60, 1463-65). Ms. Landa emphasizes that "the record indicates that Ms. Landa consistently sought and received treatment for emotional and psychological problems." *Id.* at 13.

The ALJ demonstrated she considered the evidence that Ms. Landa's symptoms were only controlled with treatment and medication. AR 37-38 ("Treatment notes show that her symptoms of anxiety and depression are adequately controlled when she takes her medications as prescribed, but she is frequently noncompliant . . . . In July 2012, the claimant told a consultative examiner that she was taking Effexor and clonazepam and that the medications were helpful with controlling symptoms [T]reating psychiatrist Javier Vera, M.D., . . . diagnosed impairments of PTSD, major depressive disorder, dysthymia, generalized anxiety disorder, and social anxiety[, which] were stable on medications of Klonopin, Prazosin, Remeron, and Fluoxetine." (citing AR 1457-58).

- Ms. Landa argues that the evidence shows that she "experiences recurring suicidal ideations and self-harming behavior that she stated was 'normal' for her." Doc. 21 at 13 (citing AR 1468-70; AR 1408-16)).

The ALJ discussed this evidence explicitly at step three. AR 35 ("The claimant has occasionally reported to emergency rooms complaining of depression and/or anxiety, such as in January 2013 when symptoms were exacerbated by family problems . . . . She also appeared in March 2014 with suicidal ideation following conflict with a boyfriend. She acknowledged that 'I usually say I'm suicidal to get my anger out.'" (citations omitted)). The ALJ acknowledged her suicidal ideation again during the step four narrative. AR 37-38, 41.

In short, I find the ALJ's discussion sufficient to demonstrate that the ALJ considered the entire record in fashioning the RFC. I do not agree that the ALJ's discussion of LCSW's opinion lacks substantial evidence because it cites only one treatment note. Elsewhere in her opinion, the ALJ demonstrated that she considered the entire record.

   D.   Dr. Steven K. Baum, PhD

Steven K. Baum, Ph.D., performed two consultative psychological evaluations and testified at the most recent hearing. AR 41. In 2017, Dr. Baum found moderate limitations with simple instructions and severe limitations with detailed or complex instructions; severe limitations in concentration and task persistence and social interactions; and mild limitations in

adaptation. AR 1578. He found "Below norm IQ with learning disorders" and specified

"aggression" as a work-related concern. *Id.* In January 2019, Dr. Baum diagnosed neurocognitive

disorder with moderate to severe cognitive impairment, likely from head banging; documented a

noticeable decline in clinical functioning; and described "a woman who is not only unable to

work" but one whose condition "declined over time" so sharply that Dr. Baum "anticipate[d] the

need for residential treatment to be approximately three years away." AR 1897.

> As the ALJ summarized:

> At the February 28, 2019 hearing, Dr. Baum testified that he spoke with the
> claimant's son who lives with her and takes care of her and also with her mother,
> and both stated that she has gotten worse. She lies about keeping appointments,
> fights with everyone, and bangs her head when frustrated. Dr. Baum testified her
> condition has gotten worse over time; there is a progressive quality. Her son
> prompts her to take medications and to get up in the morning. He reports she is
> crying more frequently. He and his girlfriend do everything for her. Her son
> further reported she bangs her head when frustrated and keeps to herself,
> definitely more than a few years ago. Dr. Baum testified the claimant probably
> was not compliant with prescribed psychotropic medications and her condition
> probably would improve if she were. When asked about the claimant's drug
> and/or alcohol use, Dr. Baum testified he did not know her history.

AR 41. The ALJ partially credited Dr. Baum's testimony, and relied on it to find Ms. Landa

disabled as of November 17, 2018. The ALJ explained:

> I accord only some weight to Dr. Baum's opinion. Dr. Baum's opinion as to the
> nature of the claimant's mental impairments (specifically, the diagnosis of bipolar
> disorder) and the severity of her functional limitations is inconsistent with the
> findings and opinions of the three consultative psychologists Dr. Araza, Dr.
> Dhanens, and Dr. Loescher. Dr. Baum's 2017 opinion is notably inconsistent with
> the findings and opinion of Dr. Loescher, who examined the claimant only two
> months earlier. Moreover, it is inconsistent with 2017 treatment notes from
> psychiatrist Dr. Vera, reporting good mood, bright affect, good spirits, low
> anxiety, no nightmares, and sleeping well.

> Nonetheless, I am relying on Dr. Baum's testimony that the claimant had declined
> by the second time he saw her, in February 2019. He assessed only moderate
> limitations for public contact in 2017, but severe in 2019. However, I do not give
> credence to his opinion that that level of severity dates back to 2010 since he
> contradicts that with his own testimony: he said he was not familiar with her
> history. He did testify that in his opinion she would improve if she was compliant

with medications, which he said she was not. This is somewhat consistent with medical evidence showing that she seemed to do well at times with medications, and deteriorated when she stopped taking them.

AR 42 (citations omitted).

Ms. Landa does not challenge the finding that she is disabled after November 17, 2018. She challenges only the ALJ's evaluation of Dr. Baum's opinion that she could not work prior to that date. Doc. 15-20. With respect to the ALJ's decision to partially discredit Dr. Baum, she argues that the reasons stated by the ALJ are inadequate.

First, Ms. Landa argues that the ALJ erred because "the diagnosis of bipolar disorder" is not inconsistent, and highlights the evidence that Drs. Baum, Araza, and Loescher all diagnosed Ms. Landa with similar mental disorders of some kind. Doc. 21 at 15-18. Dr. Araza diagnosed Ms. Landa in 2012 with mood disorder not otherwise specified, AR 974, and bipolar disorder is an example of a mood disorder. Doc. 21 at 15. Dr. Loescher diagnosed an unspecified personality disorder with borderline features. AR 1381.

The standard of review is whether the Court can follow the adjudicator's reasoning. I can easily follow the ALJ's reasoning in this respect. While Drs. Baum, Araza, and Loescher all diagnosed Ms. Landa with a mental disorder, only Dr. Baum thought that the mental disorder was so severe as to prevent her from working. That is, while Dr. Baum's opinion on the nature of the bipolar disorder may have resembled Drs. Araza and Loescher in some respects, it was different in the area that matters for Ms. Landa's disability application: whether the disorder is so severe as to prevent her from working. *See* AR 973-74 (Dr. Araza's opinion that Ms. Landa cannot carry out detailed or complicated instructions, but can carry out simple ones, can concentrate on detailed as well as simple tasks, and possess the necessary social skills to engage in a workplace environment); AR 1381 (Dr. Loescher thought Ms. Landa would be able to obtain "future mood stability" if she remained abstinent from drugs, that she was "mildly" impaired in

her ability to follow basic instructions in a work setting, and that work would cause Ms. Landa "anxiety" but was vague as to how much anxiety it would produce or what impact anxiety would have on her ability to work).

For the same reason, I can follow the ALJ's reasoning in stating that the "functional limitations" assigned by Dr. Baum are inconsistent with those assigned by Drs. Araza, Dhanens, and Loescher. Ms. Landa acknowledges that "it is certainly true that Dr. Baum's opinion regarding Ms. Landa's functional limitations is different than Dr. Araza's opinion," but argues that Dr. Baum discussed this and the ALJ should have credited Dr. Baum's explanations. Doc. 21 at 16. But it is for the ALJ to weigh these differing medical opinions, not for the providers or the Court, and the ALJ explained why Dr. Araza received more weight than Dr. Baum.

Second, Ms. Landa points out what she views as an internal inconsistency in Dr. Araza's opinion the ALJ was required to consider. Doc 21 at 16. Dr. Araza found Ms. Landa could carry out detailed instructions, but could not carry out detailed tasks. AR 973-74. The ALJ did not discuss this facet of Dr. Araza's opinion, but found in the RFC that Ms. Landa is limited to simple work. AR 36. Because the ALJ tempered the opinion in the claimant's favor (that Ms. Landa can neither follow detailed instructions nor perform detailed tasks), this is not error. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 n.2 (10th Cir. 2012) (no error to fail to resolve inconsistency where it would not "benefit [the claimant] to have the ALJ explain his failure to adopt the more unfavorable portions of Dr. Gordon's opinion"). And as I explained above, one internal inconsistency in an opinion does not mean the ALJ should reject the entire opinion. The ALJ explained why she gave more weight to Dr. Araza over Dr. Baum, which is all that is required.

Third, Ms. Landa challenges the ALJ's decision to credit Dr. Dhanens's opinion over Dr. Baum's because "Dr. Dhanens' diagnostic findings are also clearly inconsistent with both Dr. Araza and Dr. Loescher, which the ALJ described as generally consistent with one another." Doc. 17 at 21. In particular, Ms. Landa argues that Dr. Dhanens opined that "allegations of PTSD or Bipolar are not confirmed by direct observation, self-reported history is inconsistent, and psychiatric documentation is lacking" whereas Drs. Araza and Loescher both diagnosed PTSD. *Id.*

As discussed above, however, I can follow the ALJ's reasoning. Dr. Baum found limitations so severe that Ms. Landa cannot work.  Drs. Araza, Dhanens, and Loescher all found drastically milder limitations and did not opine that she cannot work. AR 1206 (Dr. Dhanens's opinion that "If we put aside the inconsistencies and took her complaints at face value, it is not clear how this would affect her ability to work" and "I saw no indication that endogenous mood disorder such as Bipolar ever affected her ability to work"); *see also* AR  973-74, 1381. These are consistent with each other and inconsistent with Dr. Baum in the sphere that matters, and the ALJ was not wrong to recognize this.

Fourth, Ms. Landa argues the ALJ should not have discounted Dr. Baum's opinion in favor of Dr. Loescher's opinion for the same reasons addressed and rejected above: the ALJ should not have credited Dr. Loerscher's opinion while also calling it "vague," and the ALJ erred by failing to consider the entire medical history and citing only one treatment note from Dr. Vera. Doc. 21 at 17-18. I reach the same conclusion here. The ALJ's assignment of more weight to Dr. Loerscher's opinion over Dr. Baum's opinion was not error for the reasons described above with respect to the rejection of LCSW Blossom's opinion.

Finally, Ms. Landa argues that the ALJ should not have discounted Dr. Baum's opinion due to his testimony at the hearing that Dr. Baum is not familiar with Ms. Landa's history. Ms. Landa argues that the ALJ took this statement out of context, and Dr. Baum was referring specifically to her history with drugs and/or alcohol use. AR 200. Ms. Landa emphasizes that Dr. Baum's reports demonstrate he is familiar with Ms. Landa's early life, medical, and cognitive history and that he reviewed medical records including records dating as far back as 2011. Doc. 21 at 19.

This does not contradict the ALJ's analysis. The ALJ clearly recognized that Dr. Baum meant only that he was not familiar with Ms. Landa's drug and/or alcohol use. AR 41 ("When asked about the claimant's drug and/or alcohol use, Dr. Baum testified he did not know her history."). Ms. Landa's history of drug use is relevant to her disability application and she testified about it at the hearing. AR 37. Other medical opinions discussed it as a relevant factor. AR 970 (Dr. Araza: "A key feature associated with this case is the claimant's reported and documented history of substance use. It is unknown at this time to what extent the claimant's use of substances may have had a negative impact on her intellectual cognitive performance and her mood"); AR 1380-81 (Dr. Loescher: "there has been a significant history of drug abuse with numerous relapses which would impact mood stability" and "[f]uture mood stability would be contingent on her ability to remain abstinent from drugs"). Ms. Landa does not argue on appeal that this is *not* a relevant factor. I find Dr. Baum's lack of familiarity with her drug use is one legitimate reason—among others—the ALJ gave to discount his opinion prior to November 2018. The ALJ did not commit legal error and her discussion is supported by substantial evidence.

## **CONCLUSION**

Based on the foregoing, I recommend denying Plaintiff's Motion To Reverse And

Remand For A Rehearing With Supporting Memorandum, Doc. 21, and affirming the decision

below.

UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**